**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AmSurg Holdings Incorporated, et al., | No. CV-17-04181-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Divesh Anireddy, et al., | |
| Defendants. | |

Pending before the Court are nonparty AmSurg L.L.C.'s ("AmSurg") identically titled motions: "Motion by Non-Party Defendant AmSurg LLC to Modify Subpoenas Directed to Bank of America." (Doc. 177, "Mot. 1"; Doc. 195, "Mot. 2".) Both Defendants and AmSurg filed responsive pleadings to each motion. (Doc. 183, "Resp. to Mot. 1; Doc. 185, "Reply to Mot. 1"; Doc. 200, "Resp. to Mot. 2"; Doc. 201, "Reply to Mot. 2.) The Court held oral argument on January 13, 2020 and issues the following Order:

## I. BACKGROUND

Defendant ECY and Plaintiff AmSurg Holdings, Inc. ("AmSurg Holdings") entered into a joint venture in October 2005 to operate a surgery center in Yuma, Arizona called The Yuma AZ Endoscopy ASC, LLC ("Yuma Endo"). (Doc. 46 ¶¶ 15-16, "FAC".) Among other things, the complaint alleges Defendants—including certain Yuma Endo board members appointed by ECY—breached fiduciary duties to the joint venture to aid the success of a newly established surgical center competing with Yuma Endo. (*See generally* FAC.) Plaintiff AmSurg Holdings' complaint survived Defendants' Motion for Summary

Judgment, (Doc. 62), and discovery is ongoing. Plaintiff AmSurg Holdings is a wholly owned subsidiary of parent company and nonparty movant, AmSurg. (Mot. 2 at 1, n.1.)

The AmSurg motions at issue share a factual nexus and are similarly argued. Broadly, the motions concern four subpoenas issued by Defendants to compel the production of financial records for specific Bank of America accounts. (*See* Doc. 122, "*4969 Subpoena"; Doc. 154, "*6372 Subpoena"; Doc. 174, "*6380 Subpoena"; Doc. 189, "Unredacted Accounts Subpoena"). Defendants issued the second subpoena to Bank of America in April 2019, seeking Yuma Endo records from AmSurg's Account No. *6372.[1] (*See* *6372 Subpoena.) AmSurg describes Account No. *6372 as a "concentration account" held to benefit over 200 affiliated ambulatory surgery centers ("ASC's"), including Yuma Endo, in which Plaintiff AmSurg Holdings holds an interest. AmSurg consolidates each ASC's finances into this account every evening, apparently to reduce banking fees otherwise unavailable to an individual ASC. (Mot. 1 at 2-3; Mot. 1, Exh. A ¶ 4, "Page Decl.") AmSurg maintains they observe careful procedures—similar to those used for an attorney's trust account—to ensure accurate accounting for each ASC's finances. (Mot. 1 at 3; Reply to Mot. 2 at 2, n.1.) Upon receipt, Bank of America conveyed the *6372 Subpoena to AmSurg. Noting the subpoena sought records for account *6372 only as they related to Yuma Endo, AmSurg informed Bank of America that information relating to all ASC's other than Yuma Endo should be redacted. (Mot. 1, Exh. B ¶ 2, "Thompson Decl.") Bank of America allegedly then consulted with Defendants, who agreed with the need for redactions, provided Bank of America review their appropriateness.[2] (*Id.* ¶ 3.) AmSurg then reviewed the 300,000 pages of records associated with account *6372 and redacted all information not pertaining to Yuma Endo. (*Id.*) Following AmSurgs' redactions and Bank of America's subsequent review, Defendants received 10,500 pages of records for

---

[1] The parties do not dispute the production of financial records related to Defendants first issued subpoena, (*4969 Subpoena). (*See* Doc. 195 at 1; Doc. 200 at 2.) AmSurg's first Motion concerns the second and third (*6372 Subpoena; *6380 Subpoena) subpoenas. (Mot. 1 at 3-4.) AmSurg's second Motion addresses the fourth subpoena for the unredacted records of both accounts *6372 and *6380. (Mot. 2 at 4.)

[2] Defendants deny agreeing to any redactions. The Court sees little reason to adjudicate a disagreement only collaterally related to the motions' central dispute.

*6372. (*Id.* ¶ 4.)

Like the *6372 Subpoena, the third subpoena sought production of all records pertaining to Yuma Endo, but for a separate account—AmSurg L.L.C.'s Bank of America Account No. *6380.[3] (*6380 Subpoena.) Account *6380 functions similarly to *6372. As the "disbursement account" for the 200-plus AmSurg-affiliated ASC's, "[c]hecks, purchasing cards and ACH payments . . . are cut from this account." (Mot. 1 at 3.) Account *6380 is subject to the similarly "vigilant" accounting practices used for *6372. (*Id.*) The fourth subpoena seeks production of unredacted records from *6372 and *6380.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(B)(i) permits a court to quash or modify a subpoena "[t]o protect a person subject to or affected by a subpoena" if the subpoena requires disclosing confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). "Ordinarily a party has no standing to seek to quash a subpoena to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the document sought." 9A Charles Wright & Arthur Miller, FEDERAL PRACTICE & PROCEDURE, §2459 (3d ed. 2008). A party thus has standing to challenge a subpoena served on another entity only upon showing a personal right regarding the subject matter of the subpoena. *See Blotzer v. L-3 Communications Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012) (citing *Delta Mech., Inc. v. Garden City Grp., Inc.*, No. 2:06-cv-01095 JWS, 2010 WL 2609057, at *2 (D. Ariz. 2010)).

A subpoena issued under Rule 45 is subject to Rule 26's relevance standard. *See* Fed. R. Civ. P. 45(d)(a), advisory committee's note to the 1970 Amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (applying both Rule 26 and Rule 45 standards to rule on a motion to quash subpoena); *see also Xcentric Ventures, L.L.C. v. Borodkin*, 934 F.Supp.2d 1125, 1144 (D. Ariz. 2013) ("Any information sought by means of a subpoena must be relevant to the

---
[3] The *6380 Subpoena also seeks production of records related to Yuma Endo's customer reference number. (*6380 Subpoena.)

claims and defenses in the underlying case. More precisely, the information sought must be reasonably calculated to lead to admissible evidence.") (quotation omitted); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (acknowledging courts consider whether the subpoena "is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)" when addressing a motion to quash subpoena duces tecum).

Rule 26, in turn, provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) ("Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'") (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). "The mere 'relevance' standard, however, does not apply to non-parties." *R. Prasad Indus. v. Flat Iron Envtl. Solutions Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 2804276, *2 (D. Ariz. June 20, 2014) (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . ., the 'necessary' restriction may be broader when a nonparty is the target of discovery.")). "To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *R. Prasad Indus.*, 2014 WL 2804276, *2.

### III. DISCUSSION

AmSurg redacted all information in account *6372 not pertaining to Yuma Endo, emphasizing such information is confidential and beyond the subpoenas' scope. It seeks modification to reflect that understanding. Defendants complain "the documents are so heavily redacted that the production has been rendered nearly worthless." (Thompson Decl. ¶ 5.) Instead, they seek unredacted disclosure of the complete records from accounts *6372 and *6380 regardless of connection to Yuma Endo. (Resp. to Mot. 2 at 4.) AmSurg wants

to limit the subpoenas only to records related to Yuma Endo, or, alternatively, to tender copies of the records to a "mutually-agreeable, neutral third party qualified to perform an accounting of the accounts at issue." (Reply to Mot. 2 at 5.) The question for the Court is whether the financial records of entities unrelated to this dispute are relevant and override AmSurg's interest in nondisclosure.[4]

The Court weighs the relevance of the records sought against AmSurg's interest in nondisclosure. As mentioned previously, when considering a motion to quash, courts look to Rule 26 to define the permissible scope of discovery applicable to a Rule 45 subpoena. *Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017). Rule 26 allows parties to obtain discovery on any non-privileged matter relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b)(1). But the relevance standard does not apply to nonparties. *R. Prasad Indus.*, 2014 WL 2804276, *2. Instead, a party's need for discovery must outweigh the non-parties' interest in non-disclosure. *Id.* Defendants argue disclosure of the unredacted records, including financial records of ASC's other than Yuma Endo in which AmSurg also holds an interest, is relevant to their claims and defenses. Specifically, Defendants contend their subpoenas for the unredacted records is required to identify: (1) all accounts where Yuma Endo funds were transferred; (2) the amount of Yuma Endo funds transferred; (3) whether Yuma Endo could finance necessary improvements from 2013-2018; (4) accounting inaccuracies and inconsistencies; and (5) the value of any benefit to AmSurg from unauthorized use of Yuma Endo funds. (Resp. to Mot. 2 at 11-12.) Although the above identifications can seemingly be made with access to the redacted records from *6372 and *6380, the Court does not confuse the information's necessity with its relevance.[5] (*Cf.* Mot. 2 at 2 ("Redacted versions of these

---

[4] Neither party to this case challenges AmSurg's standing. Given Defendants' failure to contest AmSurg's standing, the Court assumes without deciding that AmSurg has standing for purposes of this Order.

[5] Defendants fail to show the unredacted records are necessary. Generally, Defendants seek to identify where and in what amounts Yuma Endo funds were held. Defendants already possess Yuma Endo's internal accounting records. The redacted records here include line items of Yuma Endo funds in the two accounts, transaction descriptions, customer reference numbers, and Bank reference numbers for the transaction and amount. (*See generally* Mot. 1, Exh. C.) AmSurg's proposed redactions only exclude records of ASC's *other than* those related to Yuma Endo. Seemingly, Defendants can identify all Yuma Endo

- 5 -

records . . . provide information necessary to make these determinations.")) Defendants do not adequately explain how the financial records of other ASC's or AmSurg generally—all non-parties to this matter—bear on calculating Yuma Endo's finances.[6]

Defendants' argument concerning AmSurg's place in the "web of entities" associated with Plaintiff AmSurg Holdings is difficult to parse. (*See* Resp. to Mot. 2 at 7.) The contention that AmSurg Holdings is an "imposter" is central to Defendants counterclaims and defenses. (*See* Doc. 68 at ¶ 30.) They now claim nonparty movant AmSurg is an unknown "affiliate entity of AmSurg Holdings belonging to a "web of AmSurg-related entities . . . part of a complex structure of entities that formed and merged with each other, or with other entities, since the formation of Yuma Endo." (Resp. to Mot. 1 at 4.) AmSurg, however, clarifies repeatedly: "AmSurg . . . makes clear that it is the 100% owner of AmSurg Holdings." (Reply to Mot. 1 at 3; Reply to Mot. 2 at 4). Seemingly, Defendants ask the Court to make a tenuous inference that because AmSurg may be part of a large shell game of "imposter" entities, the discovery of funds with no relation to Yuma Endo in AmSurg-controlled accounts is merited. The Court will not order nonparty discovery of questionable relevance on such speculation.

Further, the unredacted records are not reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Defendants do not explain how the records from ASC's *other than* Yuma Endo (and not owned by Plaintiff AmSurg Holdings) are reasonably calculated to lead to evidence pertaining to their claims and defenses. Rather, at oral argument, Defendants' counsel argued his expert required the financial records of the 200-plus unrelated ASC's to conduct an accurate audit. Defendants included no expert affidavit to confirm this representation nor pointed to what specific information absent from

---

transactions, calculate available funds on specific dates, and verify the accounting accuracy by cross-referencing the redacted bank records with Yuma Endo's internal accounting. Additionally, any unexplained deductions or accounting anomalies should be identifiable and may warrant future unredacted disclosure.

[6] In their Answer, Defendants make various claims concerning the misuse of Yuma Endo funds, including that AmSurg Holdings embezzled funds. (Doc. 68 at ¶¶ 57-58, 65, 79.) Defendants do not allege, however, that AmSurg Holdings misappropriated funds by transferring them to any other ASC whose funds are also held in accounts *6372 and *6380 or to AmSurg. Again, even the redacted records should allow Defendants to identify discrepancies in the transfer of funds in and out of the two accounts.

AmSurg's redacted disclosure was required and why it was necessary. Given the financial information's questionable relevance and tenuous relationship to Yuma Endo, justifying its disclosure is difficult. AmSurg's nonparty status additionally favors granting its motions. The records at issue are held in a nonparty's account for nonparty ASCs not implicated by Defendants' claims and defenses. Disclosure of nonparty financial records merits a heightened review. *See Dart Indus. Co.*, 649 F.2d at 649 ("[M]ore appropriate nomenclature is 'nonparty' discovery, not 'third-party' discovery, as 'the word nonparty serves as a constant reminder of the reasons for the limitations that characterize third-party discovery.'") (internal citation and quotation marks omitted). The financial records of over 200 ASC's held in the same account as Yuma Endo's funds is only relevant insofar as the Court indulges in assumptions Defendants themselves do not expressly make.[7] *See supra* n.6; *see also Feulufai v. Pac. Princess P'ship Ltd.*, 2:07-cv-00808-JCM-RJJ, 2009 WL 10692824, at *2 (D. Nev. Sept. 10, 2009) ("Although the burden on the party requesting discovery is low, the party must meet a threshold of relevance that is beyond mere speculation that the requested information might be useful.").

That said, AmSurg's interest in nondisclosure is not clear. Although the court assumes, without deciding, AmSurg has standing, it cannot assign a speculative value to their privacy interest in non-disclosure. As bank records "are the business records of the bank," a privacy interest in a party's bank records cannot be presumed. *Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980); *Cf. United States v. Miller*, 425 U.S. 435, 442 (1976) (holding that a bank customer has no "legitimate expectation of privacy" in the contents of checks, deposit slips, and other banking documents) (internal quotation marks and citation omitted). Standing does not automatically establish the existence of a threatened personal privilege required. *U.S. v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007). Rule 45(c)(3) directs a court to quash or modify a subpoena if, among other factors, it "requires disclosure of privileged or other

---

[7] Defendants argue the Protective Order in place in this action, (Doc. 36), sufficiently obviates AmSurg's confidentiality concerns. Protective Order or not, the Court will not require production of irrelevant confidential records relating to a nonparty. *See Erhard v. Bofl Holding, Inc.*, 2019 WL 5994417, at *7 (S.D. Cal. Nov. 15, 2018).

protected matter" including "disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(B)(3). AmSurg offers little to explain the confidential nature of the records at issue. *See DIRECTV, Inc. v. Richards*, No. Civ. 03-5606(GEB), 2005 WL 1514187, at *4 (D.N.J. June, 27, 2005) (determining a party must offer more than "vague legal conclusions and speculation" about a claimed privacy interest in denying a motion to quash a subpoena).

Ultimately, Defendants' failure to demonstrate the relevance of nonparty ASC's financial records to the current dispute obviates this question. Given that failure, Defendants' need for discovery of dubiously relevant records does not merit the unredacted disclosure they seek and falls short of outweighing AmSurg's baseline interest in nondisclosure.[8] *See Prasad Indus.*, 2014 WL 2804276, *2.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** GRANTING Non-Party AmSurg LLC Motions to Modify Subpoenas Directed to Bank of America. (Doc. 177; Doc. 195.)

**IT IS FURTHER ORDERED** GRANTING Non-Party AmSurg LLC's Motion to File Exhibit Under Seal, (Doc. 175). The Clerk of Court is directed to file Exhibit C of Doc. 177 under seal.

Dated this 14th day of January, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[8] Defendants' counsel showed little interest in entertaining AmSurg's proffer of a mutually-agreeable, third-party expert to ensure the redactions are warranted and discovery is not "used for a fishing expedition to investigate mere speculation." *Mullally v. Havasu Landing Casino*, No. EDCV 07-16260-VAP (DTB), 2012 WL 13013031, at *1 (C.D. Cal. June 21, 2012); *see also Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996); (Mot. 1 at 6; Mot. 2. at 7.)